In the Matter of Dennis R. DOVE, Debtor.

**FIRST NATIONAL BANK OF COMMERCE, Plaintiff,**

v.

**Dennis R. DOVE, Defendant.**

**Bankruptcy No. 84–30276.
Adv. No. 85–3001.**

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Aug. 22, 1986.

der Chapter 7 of the United States Bankruptcy Code. On January 30, 1985, First National Bank of Commerce, Plaintiff, filed a complaint objecting to Defendant's discharge in bankruptcy and also contending that certain debts of Defendant are nondischargeable. The complaint came on for trial on September 19, 1985. The Court, having considered the evidence presented at trial and the briefs and arguments of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

In 1972 while Defendant was still in high school, he opened up a Radio Shack store in Royston, Georgia, and operated it as a sole proprietorship under the name of Rhythm Village. He subsequently opened up three additional stores, including one which he opened in Commerce, Georgia, in 1977.[1]

In December of 1981, Defendant decided to purchase some Model 2 computers from Radio Shack. He hoped to sell these computers quickly and to make a profit. Defendant took out a short-term loan from Plaintiff for $31,174.28 at 18% interest to finance the purchase of the computers. Defendant had conducted banking business with Plaintiff since he opened his Rhythm Village store in Commerce, Georgia. As evidence of the loan, Defendant executed a promissory note dated December 8, 1981, with a maturity date of February 6, 1982. As security for the promissory note, Plaintiff took a security interest in inventory listed on Defendant's invoice numbers 139927, 128550, 130766, 1115830, and 122205.[2] Plaintiff duly filed a financing statement covering its security interest on December 14, 1981, in Jackson County, Georgia.

Plaintiff's loan to Defendant accounted for 70% of the purchase price of the computers, with Defendant providing the other 30%. Shortly after Defendant received the Model 2 computers, Radio Shack introduced

John Terry Brown, Commerce, Ga., for plaintiff.

Ernest V. Harris, Athens, Ga., for defendant.

## STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

On October 31, 1984, Dennis R. Dove, Defendant, filed his voluntary petition un-

---

1. Defendant opened a Rhythm Village store in 1976 in Hartwell, Georgia, and he opened one in 1977 in Elberton, Georgia.

2. The evidence established that the inventory listed on these invoices was the Model 2 computers.

a more technically advanced line of computers that rendered the Model 2 computers obsolete. The new line of computers sold for less than the Model 2 computers, and as a result, Defendant encountered great difficulty in selling the Model 2 computers. When the promissory note matured on February 6, 1982, Defendant could not pay it off completely, but the testimony establishes that he did pay off the accrued interest and some of the principal. Defendant renewed the promissory note on February 18, 1982, in the amount of $25,795.16 at 19.5% interest. As additional security for the renewal, Plaintiff took a security interest in Defendant's Model III 32K business machine. For some unexplained reason, Plaintiff did not file the financing statement on the Model III 32K business machine until October 24, 1984.

Defendant could not pay off the entire balance of this promissory note when it came due, but he did pay the interest and a small sum on the principal. Defendant subsequently entered into the following series of short-term renewals on the promissory note:

| DATE ENTERED INTO | AMOUNT | INTEREST RATE | DATE OF MATURITY |
|---|---|---|---|
| May 19, 1982 | $25,795.16 | 18.5% | August 17, 1982 |
| September 16, 1982 | $25,795.16 | 16.5% | December 15, 1982 |
| February 22, 1983 | $25,000.00 | 16.0% | May 23, 1983 |

Defendant testified that on each promissory note, Plaintiff listed the inventory from invoice numbers 139927, 128550, 130766, 1115830, and 122205 and the Model III 32K business machine as security without asking Defendant if he still had the computers and the business machine. Defendant testified that he sold all of the computers listed on the invoices within a year to a year and a half of December 1981 at cost or below cost. Defendant did not tell Plaintiff that he had sold the computers because Defendant believed that he had entered into a floor plan financing arrangement with Plaintiff and that under such an arrangement he could sell the computers and substitute new inventory.

Upon the advice of his attorney and his accountant, Defendant decided to incorporate his four stores as Rhythm Village, Inc. in 1981. The corporation was chartered in April of 1981, but the corporation was not activated until January of 1983. Defendant testified that corporate checking accounts were opened from which he conducted banking business for the corporation in his capacity as the president of the corporation. Title to the business' assets was never transferred to the corporation. The corporate minutes were not kept up to date. Defendant did keep balance sheets, bank account statements, and various other records for the period preceding the incorporation and for the period following the incorporation.

When the February 22, 1983, promissory note, which Defendant signed individually, came due on May 23, 1983, Defendant was not able to pay it. Without assuming Defendant's debt, the corporation executed a promissory note dated March 10, 1984, which purported to renew the indebtedness evidenced by Defendant's individual promissory note of February 22, 1983. The March 10, 1984, promissory note provided for monthly installment payments of $500 and one balloon payment of $17,916.42 on March 15, 1987. The computers and business machine were once again listed as security. The evidence reveals that Plaintiff was aware of the existence of the corporate entity, and the execution of the promissory note evidenced that Plaintiff intended to do business with the corporate entity. Defendant subsequently filed his bankruptcy petition.

## CONCLUSIONS OF LAW

Plaintiff objects to Defendant's discharge under sections 727(a)(2)(A)[3] and

**3.** 11 U.S.C.A. § 727(a)(2)(A) (West 1979 & Supp. 1986).

727(a)(3) [4] of the Bankruptcy Code and asserts that certain debts are nondischargeable under sections 523(a)(2) [5] and 523(a)(4) [6] of the Bankruptcy Code. When a creditor objects to the discharge of a debtor under section 727 or asserts the nondischargeability of a particular debt under section 523, the creditor has the burden to demonstrate that the debtor is not entitled to a discharge or is not entitled to have a particular debt discharged. *See Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986). In *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, [7] the former Fifth Circuit Court of Appeals noted:

> The overriding purpose of the bankruptcy laws is to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts.... To this end, the courts have narrowly construed exceptions to discharge against the creditor and in favor of the bankrupt.... Accordingly, the burden of proof lies with the creditor to demonstrate that the particular debt falls within one of the statutory exceptions.... The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge.

666 F.2d at 879–80 (footnotes and citations omitted). *See also Lowe v. Roberto's, Inc. (In re Roberto's, Inc.)*, 18 B.R. 551 (Bankr. S.D.Fla.1982); *Maco Federal Credit Union v. Adair (In re Adair)*, 17 B.R. 456 (Bankr. N.D.Ga.1980).

Plaintiff first asserts that Defendant's discharge should be denied under section 727(a)(2)(A) because Defendant's failure to advise Plaintiff of the disposition of the Model 2 computers constituted a continuing concealment which extended the one year requirement of the section. Section 727(a)(2)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

> . . . .

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

> (A) property of the debtor, within one year before the date of the filing of the petition....

11 U.S.C.A. § 727(a)(2)(A) (West 1979 & Supp.1986).

Based upon the evidence presented at trial, the Court concludes that Plaintiff has failed to meet its burden of proof under this section. The evidence shows that Defendant sold all of the computers before October 31, 1983.[8] Defendant filed his petition for bankruptcy on October 31, 1984. The Court, therefore, finds that any transfer that occurred, occurred more than one year prior to Defendant's bankruptcy filing. Plaintiff has not proven that Defendant's actions constitute a continuing concealment which would bring the transfers within the statutory period of section 727(a)(2)(A). Plaintiff has shown no affirmative act on the part of Defendant to conceal his sale of the computers and has shown no intentional breach of a duty to disclose the sales. The evidence also does not show any intent on Defendant's behalf to hinder, delay, or defraud Plaintiff.

Plaintiff also asserts that Defendant's discharge should be denied under section 727(a)(3) because Defendant failed to keep adequate records. Section 727(a)(3) provides:

(a) The court shall grant the debtor a discharge, unless—

> . . . .

---

**4.** 11 U.S.C.A. § 727(a)(3) (West 1979 & Supp. 1986).

**5.** 11 U.S.C.A. § 523(a)(2) (West Supp.1986).

**6.** 11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1986).

**7.** 666 F.2d 873 (5th Cir.1982) (Unit B).

**8.** Defendant testified that he sold all of the computers within twelve to fifteen months of December 1981.

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

11 U.S.C.A. § 727(a)(3) (West 1979 & Supp. 1986).

*Collier on Bankruptcy* notes the following:

[Section 727(a)(3) ] is imposed to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge.

. . . .

It is sufficient if the books and records are kept, if required at all, so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business. He is not under a duty to maintain books in an elaborately scientific and comprehensive form; the "dictates of ordinary fair dealing, or common caution, are taken to supply any inability to tell in advance just what the law will exact."

4 *Collier on Bankruptcy* ¶ 727.03[1], [3] (15th ed. 1986) (footnotes and accompanying citations omitted). *See also Chaudhry v. Usoskin (In re Usoskin)*, 56 B.R. 805, 815 (Bankr.E.D.N.Y.1985); *Harman v. Brown (In re Brown)*, 56 B.R. 63, 66–67 (Bankr.N.H.1985).

Plaintiff alleges that Defendant never properly organized Rhythm Village, Inc. as a corporation, never kept the necessary corporate records and minutes to comply with Georgia law, and operated Rhythm Village, Inc. as he had when it was a sole proprietorship. The Court notes that under section 727(a)(3), Plaintiff has the burden of proving that Defendant failed to keep adequate records from which Defendant's financial condition or business transactions might be ascertained. *See In re*

*Usoskin*, 56 B.R. at 815–16; *In re Brown*, 56 B.R. at 67.

Based upon the evidence, the Court finds that Plaintiff has not carried its burden of proof. Plaintiff has not presented any evidence that Defendant failed to produce all of his records relating to his financial condition or business transactions. Instead, the evidence shows that Defendant offered his financial records for Plaintiff's inspection. Defendant's financial records included balance sheets for Rhythm Village, Inc. The Court is not persuaded by Plaintiff's argument that the failure of Defendant to keep the minute books of Rhythm Village, Inc. current is sufficient to deny Defendant a discharge under this section. Corporate minutes are the official records of directors' or shareholders' meetings, and Plaintiff has not demonstrated how the failure to keep the corporate minutes current affected an interested party's ability to understand Defendant's financial affairs. Section 727(a)(3) requires records to be kept by the debtor so that the debtor's financial condition can be ascertained. *See In re Usoskin*, 56 B.R. at 815; *In re Brown*, 56 B.R. at 66–67. From the evidence presented, the Court finds that Defendant has kept such records.

Plaintiff asserts that Defendant's debt to Plaintiff arising from the loan Defendant obtained to purchase the computers is not dischargeable under sections 523(a)(2) and 523(a)(4) of the Bankruptcy Code. These sections provide:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

11 U.S.C.A. § 523(a)(2), (a)(4) (West 1979 & Supp.1986).

First, Plaintiff argues that Defendant's debt to Plaintiff should not be discharged because Defendant intentionally made false representations to Plaintiff that the computers used as collateral continued to be in his possession when he had already sold them. Although Plaintiff raises its argument under the context of section 523(a)(2)(A), it argues that Defendant made false representations in writing to Plaintiff; therefore, the Court will also examine Plaintiff's arguments within the context of section 523(a)(2)(B).

To meet its burden of proof under section 523(a)(2)(A), Plaintiff must prove the following:

[That] the debtor made a false representation with the purpose and intention of deceiving the creditor; the creditor relied on such representation; his reliance was reasonably founded; and the creditor sustained a loss as a result of the representation. . . . The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. . . . The burden is on the creditor to prove the debtor's culpability by clear and convincing evidence.

*In re Hunter,* 780 F.2d at 1579 (footnote and citations omitted). Regarding the issue of proof of intent under section 523(a)(2)(A), the court in *Meat Require-*

*ments Coordination, Inc. v. Salett (In re Salett)*[9] recently stated the following:

A failure to fulfill a mere promise to pay a debt cannot support a finding of fraud. *In re Simpson,* 29 B.R. 202, 209 (Bankr. W.D.Iowa 1983); *In re Collins,* 28 B.R. 244 (Bankr.W.D.Okla.1983). . . . Only where one purchases goods on credit knowing he does not intend to pay for the goods or knowing he is unable to comply with the payment requirements of the contract, does he fraudulently obtain the goods, making the debt nondischargeable. *Matter of Artrip,* 27 B.R. 54, 56 (Bankr.M.D.Fla.1983); *In re Schartner,* 7 B.R. 885, 888 (Bankr.N.D. Ohio (1980).

53 B.R. at 928.

For the following reasons, the Court finds that Plaintiff has failed to prove that Defendant made a false representation with the purpose and intention of deceiving Plaintiff, as required under section 523(a)(2)(A). The evidence shows that at the time Defendant renewed the loan from Plaintiff, Defendant intended to repay the loan. He initially had trouble selling the computers, but he did apply some of the proceeds from the sales to the principal and interest on the loan. Defendant also testified that he believed that he had a floor plan financing arrangement with Plaintiff. Under such an arrangement, Defendant believed that he could take the proceeds from the sale of the computers and buy other inventory similar to the computers and Plaintiff would have security in the after acquired inventory. The Court thus concludes that Plaintiff has not proven by clear and convincing evidence that Defendant made a false representation with the purpose and intention of deceiving Plaintiff, as required under section 523(a)(2)(A).

To be actionable under section 523(a)(2)(B), there must be a statement in writing respecting the debtor's financial condition. *See* 3 *Collier on Bankruptcy* ¶ 523.09[1] (15th ed. 1986). Even if the statement concerning the computers on the promissory note could be construed to meet

**9.** 53 B.R. 925 (Bankr.Mass.1985).

the financial statement requirement,[10] the Court finds that Plaintiff has also not carried its burden of proof under this section. For the reasons stated above, the Court concludes that Defendant did not have the requisite intent to deceive Plaintiff, as required under section 523(a)(2)(B).

■ Plaintiff also raises the argument that Defendant's debt to Plaintiff is nondischargeable under section 523(a)(4). Before the Court can find a debt for fraud or defalcation nondischargeable under section 523(a)(4), the Court must find that a fiduciary relationship existed between Plaintiff and Defendant. A fiduciary relationship generally arises from an express trust or a statutory trust. *See Congress Financial Corp. v. Levitan (In re Levitan)*, 46 B.R. 380, 384–87, 12 Bankr.Ct.Dec. 835, 836–39 (Bankr.E.D.N.Y.1985). Plaintiff asserts that Defendant, as the sole stockholder, director, and president of Rhythm Village, Inc., owed a fiduciary duty to the creditors of Rhythm Village, Inc. While the Court notes that a corporate officer generally owes a fiduciary duty to his corporation, it cannot be said that his fiduciary duty always extends to creditors of the corporation for purposes of section 523(a)(4).

This Court in *Rogers v. Funk/Hansard, Inc. (In re Funk/Hansard, Inc.)*[11] addressed the issue of whether a corporate officer owes a fiduciary duty to a creditor of the corporation. The Court noted:

> In *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873 (5th Cir.1982) (Unit B), the former Fifth Circuit held, in applying section 17a(4) of the Bankruptcy Act, that a corporate officer's misappropriation or defalcation while acting as a corporate officer did not give rise to individual liability to creditors of the corporation. In so holding, the court noted that to permit a corporate creditor to have a debt of the

corporation declared nondischargeable in the officer's individual bankruptcy case would be unduly burdensome on the bankrupt. Moreover, the creditor's dischargeability complaint against the corporate officer could interfere with the corporation's right to recover against the officer. The court concluded that the "preferable approach would be to allow the corporation (or its trustee in bankruptcy) to assert a claim based on the defalcation that would inure to the benefit of all the corporation's creditors." *Id.* at 880.

> [In] *Kosik v. Hays (In re Hays)*, 31 Bankr. 285 (Bankr.E.D.Tenn.1983), ... the court stated that when a corporate officer misappropriates corporate funds, there is usually no fiduciary relationship, as required by section 523(a)(4) of the Bankruptcy Code, between the corporate officer and a creditor of the corporation. *See also Ford Motor Credit Co. v. Talcot (In re Talcot)*, 29 Bankr. 874, 10 Bankr.Ct.Dec. 734 (Bankr.D.Kan.1983).

No. 82–51003–Mac (Adv.Proc. No. 82–5387), slip op. at 16–17 (Bankr.M.D.Ga. July 27, 1984) (footnotes omitted). The Court thus concludes that Defendant cannot be considered a fiduciary of Plaintiff based upon his fiduciary relationship with Rhythm Village, Inc.

The Court is persuaded that Defendant did not act individually as a fiduciary of Plaintiff by virtue of the promissory note dated March 10, 1984. First, the Court finds that at the request of Plaintiff, Defendant did not sign the promissory note in an individual capacity, but signed the promissory note in his capacity as president for Rhythm Village, Inc. The fiduciary relationship of section 523(a)(4) does not encompass ordinary commercial relationships such as debtor-creditor and principal-agent. *Everwed Co. v. Ayers (In re Ayers)*, 25 B.R. 762, 774 (Bankr.M.D.Tenn.1982).

---

**10.** The Fourth Circuit Court of Appeals in *Engler v. Van Steinburg (In re Steinburg)*, 744 F.2d 1060 (4th Cir.1984), broadly construed section 523(a)(2)(B) and included within it any statement made by the debtor in writing respecting the debtor's financial condition. Such statements include "[a] debtor's assertion that he owns certain property free and clear of other

liens...." 744 F.2d at 1061. *See also Butler v. Roberts (In re Roberts)*, 54 B.R. 765, 770 (Bankr. N.D.1985).

**11.** No. 82–51003–Mac (Adv.Proc. No. 82–5387) (Bankr.M.D.Ga. July 27, 1984) [Available on WESTLAW, DCT database].

Unless the parties intended a trust, defined a trust res, and gave specific duties regarding the trust funds or unless a statute imposes a trust, the fiduciary relationship contemplated in section 523(a)(4) does not extend to financing arrangements or security agreements. *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *Chrysler Credit Corp. v. Freeman (In re Freeman),* 30 B.R. 704 (Bankr.W.D.La.1983). The language of the promissory note Defendant signed for Rhythm Village, Inc., in his capacity as president, did not impose such a trust on Defendant,[12] and there is no statutory trust that imposes a fiduciary relationship upon Defendant under the facts presented at trial. The Court is unable to conclude that Defendant was a fiduciary of Plaintiff. The Court finds that the relationship between Plaintiff and Defendant was, at most, that of debtor and creditor. Plaintiff, therefore, has not carried its burden of proof under section 523(a)(4).

An order in accordance with this opinion is attached hereto.

---

12. *See Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Freeman,* 30 B.R. 704 (Bankr.W.D.La.1983); *Ford Motor Credit Co. v. Talcott (In re Talcott),* 29 B.R. 874, 10 Bankr.Ct.Dec. 734 (Bankr.Kan. 1983) (security agreements generally do not create a trust relationship for purposes of section 523(a)(4)).