# United States Court of Appeals
## For the First Circuit

No. 16-9006

IN RE JOSEPH M. CURRAN,

Debtor.

CAROLYN PRIVITERA,

Plaintiff, Appellant,

v.

JOSEPH M. CURRAN,

Defendant, Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Howard, <u>Chief Judge</u>,
Selya and Lynch, <u>Circuit Judges</u>.

<u>Paul W. Hughes</u>, with whom <u>Michael B. Kimberly</u>, <u>Karianne Jones</u>, <u>Mayer Brown LLP</u>, <u>William C. Parks</u>, and <u>Parks Law Offices</u> were on brief, for appellant.
<u>Louis S. Haskell</u>, with whom <u>Joy D. Hotchkiss</u> and <u>Law Office of Louis S. Haskell</u> were on brief, for appellee.

April 20, 2017

**SELYA**, **Circuit Judge**.  In this bankruptcy appeal, the parties ask us to resolve an issue that has divided our sister circuits: whether the phrase "statement . . . respecting the debtor's . . . financial condition," as used in 11 U.S.C. § 523(a)(2)(B), should be interpreted narrowly to refer only to those documents that speak directly to the debtor's overall financial condition or broadly to include those documents that merely reference a single asset or liability.  Compare, e.g., Bandi v. Becnel (In re Bandi), 683 F.3d 671, 676 (5th Cir. 2012), and Cadwell v. Joelson (In re Joelson), 427 F.3d 700, 714 (10th Cir. 2005) (employing narrow approach), with Appling v. Lamar, Archer & Cofrin, LLP (In re Appling), 848 F.3d 953, 960 (11th Cir. 2017) and Engler v. Van Steinburg (In re Van Steinburg), 744 F.2d 1060, 1061 (4th Cir. 1984) (employing broad approach).  But courts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures.  Here, we see no need to enter onto terra incognita but, rather, decide the case on less controversial principles of pleading and materiality.  When all is said and done, we affirm.

## I.  BACKGROUND

We begin with a brief description of the legal foundation on which this case rests.  Chapter 7 liquidation proceedings enable an individual debtor to gain a "fresh start" by granting him a discharge that releases him from almost all debt previously

- 2 -

incurred.  Grogan v. Garner, 498 U.S. 279, 283 (1991); Harrington v. Simmons (In re Simmons), 810 F.3d 852, 855 (1st Cir. 2016). Such a discharge is available, though, only to the "honest but unfortunate debtor."  Premier Capital, LLC v. Crawford (In re Crawford), 841 F.3d 1, 7 (1st Cir. 2016) (quoting Grogan, 498 U.S. at 286-87).  To this end, the bankruptcy code exempts some debts — especially those rooted in fraud and deceit — from discharge. See 11 U.S.C. § 523(a).  These exemptions are construed stringently and creditors must show that a debt "comes squarely" within a particular exemption.  McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001).

This case, which deals with a creditor's attempt to avail herself of two such exemptions, was resolved on what amounts to a motion for judgment on the pleadings.  Accordingly, we rehearse the facts as they appear in the plaintiff's complaint (and the documents incorporated by reference therein) and draw all reasonable inferences in the plaintiff's favor.  See Shay v. Walters, 702 F.3d 76, 78 (1st Cir. 2012).

In November of 2007, the debtor, Joseph M. Curran, and the plaintiff, Carolyn Privitera, were romantically involved.  In need of funds, the debtor turned to the plaintiff, who promised to loan him $30,000.  During negotiations, the plaintiff (represented by counsel) asked the unrepresented debtor to draw up a list of his property.  In response, the debtor gave her a list of property

- 3 -

(the List), comprising property "belonging" to him "either by title or by physical possession" and used in his landscaping business. The plaintiff's attorney made only minor changes to the List before converting it into what he unilaterally styled as a "List of Collateral." The attorney then prepared a loan agreement (the Agreement) and attached the List as an exhibit.

The List included sixteen different landscaping-related items ranging from a variety of clippers and trimmers to two trucks. The purchase price of each item was listed beside the item in a column labeled "cost." Excluding the trucks, the total cost of the remaining items was slightly over $22,000. With the trucks, the total cost of all the items ballooned to more than $86,000. Unbeknownst to the plaintiff, the debtor was still making installment payments on at least one of the trucks and that truck remained titled to the lender.

Article II of the Agreement specified that the debtor would execute and deliver a security agreement and financing statements "covering" the property included in the List. It further provided that the debtor would record and file all documents necessary to "perfect and protect" the plaintiff's security interest. To ensure this protection, Article II empowered the plaintiff to sign and file financing statements on the debtor's behalf.

The Agreement was executed in November of 2007, and the plaintiff transferred $30,000 to the debtor's bank account. Even so, no security agreement or financing statement was presented, and neither the plaintiff nor the debtor took any steps to perfect the plaintiff's security interest in the property. The loan proved to be a poor investment: the debtor repaid less than $5,000 before defaulting in 2012.

The plaintiff sued the debtor in a Massachusetts state court and, in March of 2014, secured a default judgment in the amount of $137,030.78 (a sum that included damages, interest, and costs). Later that year, the debtor — without making any payment on the judgment — filed for Chapter 7 bankruptcy protection. See 11 U.S.C. §§ 701-784.

In due course, the plaintiff commenced an adversary proceeding in the bankruptcy court seeking an order declaring the debt non-dischargeable. She claimed that the List was a false statement submitted to induce her to make the loan, thus bringing the debt within the purview of 11 U.S.C. § 523(a)(2)(B), which renders non-dischargeable debts obtained through "use of a statement in writing — (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor . . . reasonably relied; and (iv) that the debtor . . . published with intent to deceive."

The debtor answered the complaint and then moved to dismiss for failure to state a claim. The plaintiff not only opposed this motion but also moved to amend her complaint to include an alternative claim that the debt was non-dischargeable under section 523(a)(2)(A). That section exempts from discharge debts obtained through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A); see Field v. Mans, 516 U.S. 59, 64-69 (1995) (comparing section 523(a)(2)(A) and section 523(a)(2)(B) claims).

After a hearing, the bankruptcy court granted the debtor's motion to dismiss. In a bench decision, the court concluded that, with respect to the section 523(a)(2)(B) claim, the plaintiff's failure to perfect any security interest in the debtor's property rendered her reliance on the List unjustifiable. At the same time, the court denied the plaintiff's motion to amend as futile, noting that the proposed amended complaint did not allege that the debtor had made any affirmative misrepresentations and that the plaintiff's failure to perfect "would be fatal, in any case."

The plaintiff took a first-tier appeal to the Bankruptcy Appellate Panel for the First Circuit (the BAP). Because the debtor had answered the complaint before moving to dismiss, the BAP construed his motion as a motion for judgment on the pleadings.

- 6 -

See Fed. R. Bankr. P. 7012(b) (incorporating Federal Rule of Civil Procedure 12); Fed. R. Civ. P. 12(b) (stating that a motion to dismiss for failure to state a claim must be filed before a responsive pleading). It proceeded to hold that the List was not a "statement . . . respecting the debtor's . . . financial condition" within the meaning of section 523(a)(2)(B) and that, even if it was, the plaintiff did not plead sufficient facts to show that the List was materially false. See Privitera v. Curran (In re Curran), 554 B.R. 272, 282-83 (B.A.P. 1st Cir. 2016). At the same time, the BAP affirmed the denial of the plaintiff's motion to amend. See id. at 287. This timely second-tier appeal followed.

## II. ANALYSIS

In this circuit, appeals in bankruptcy cases proceed through a two-tiered framework. See In re Simmons, 810 F.3d at 856. A party who loses in the bankruptcy court has a choice: he may take his initial appeal either to the district court or to the BAP. See 28 U.S.C. § 158(a), (b). The court of appeals offers a second tier of appellate review. See id. § 158(d)(1). We afford no particular deference to decisions of the first-tier appellate tribunal (be it the district court or the BAP) and focus instead on the bankruptcy court's decision. See Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry., Ltd.), 799 F.3d 1, 5 (1st Cir. 2015).

Here, the plaintiff's challenge is twofold. First, she asserts that the bankruptcy court erred when it dismissed her complaint. Second, she asserts that the bankruptcy court compounded this initial error by refusing to allow her to add a section 523(a)(2)(A) claim to her complaint. We address these assertions sequentially.

In litigating adversary proceedings in bankruptcy, the standards embedded in Federal Rule of Civil Procedure 12 apply. See Fed. R. Bankr. P. 7012; see also Rok Builders, LLC v. 2010-1 SFG Venture LLC (In re Moultonborough Hotel Grp., LLC), 726 F.3d 1, 4 (1st Cir. 2013) (explaining that "[t]he legal standards traditionally applicable to . . . motions to dismiss apply without change in bankruptcy proceedings"). The bankruptcy court and the BAP expressed divergent views about whether the debtor's motion should be treated as a motion to dismiss or a motion for judgment on the pleadings. Here, however, those divergent views do not matter: when — as in this instance — a motion for judgment on the pleadings serves "as a vehicle to test the plausibility of a complaint," it is treated like a motion to dismiss under Rule 12(b)(6). Shay, 702 F.3d at 82 (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)). Regardless of the label, we review the bankruptcy court's dismissal of the complaint de novo, accepting all well-pleaded facts as true and drawing all reasonable inferences in the pleader's favor. See id. at 79.

In order to survive dismissal, a complaint need not set forth "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), but it must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). If the facts articulated in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint is vulnerable to a motion to dismiss. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

This sort of plausibility review requires courts to undertake a two-step pavane. See Shay, 702 F.3d at 82. First, the court must set aside the complaint's conclusory averments. See id. Second, it must evaluate whether the remaining factual content supports a "reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Grajales, 682 F.3d at 45); see Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003) (similar). In conducting this tamisage, the court "need not give weight to bare conclusions, unembellished by pertinent facts." Shay, 702 F.3d at 82-83.

Much of the briefing in this case focuses on whether the List is a statement respecting the debtor's financial condition. Here, though, that issue need not be resolved because — even if we

assume, for argument's sake, that the List constitutes a statement of financial condition — the judgment below must be affirmed. The critical datum is that the plaintiff has failed plausibly to allege that the List was materially false.[1] We explain briefly.

Material falsity is an element of a claim under section 523(a)(2)(B). See 11 U.S.C. § 523(a)(2)(B)(i); Abramov v. Movshovich (In re Movshovich), 521 B.R. 42, 61 (Bankr. D. Mass. 2014). To make out a claim that a statement is materially false within the purview of section 523(a)(2)(B), a plaintiff must plausibly allege that the statement misrepresented the kind of information that "would normally affect the decision to grant credit" and thus portrayed a substantially untruthful picture of the debtor's financial condition. Bethpage Fed. Credit Union v. Furio (In re Furio), 77 F.3d 622, 625 (2d Cir. 1996) (citation omitted); see In re Movshovich, 521 B.R. at 61. A statement may be rendered materially false either by an affirmative misrepresentation, see, e.g., In re Movshovich, 521 B.R. at 62, or by omission, see, e.g., Leominster Hous. Auth. v. Dunbar (In re Dunbar), 474 B.R. 14, 21 (Bankr. D. Mass. 2012). To sink to the level of a misstatement by omission, the party privy to the omitted

---

[1] To be sure, we do not rely on the reasoning of either the bankruptcy court or the BAP. But that shift in focus presents no obstacle. We are not wed to a lower court's reasoning but, rather, may affirm the dismissal of a claim on any ground made manifest by the record. See MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014).

information must have been obligated to furnish it.  See id. (collecting cases).

Viewed against this backdrop, the plaintiff's complaint needed plausibly to plead either that the debtor affirmatively misrepresented the status of the items enumerated in the List or that he omitted information he was obligated to furnish.  In this case, the complaint does not identify any affirmative misrepresentations.  Instead, it alleges only that the plaintiff expected the debtor to supply a list of property "belonging to [him], either by title or by physical possession."  In response, the debtor gave her exactly what she had requested: a list of items that he either owned or possessed.  He added the cost (that is, the purchase price) of each of the items.  The plaintiff does not claim that the substance of the List was in any way untrue, nor does she claim that the debtor made any affirmative misrepresentations about the nature of his interest in the enumerated items.

Stripped to its essence, then, the plaintiff's case rests on a claim that it is what the debtor did not say that created a materially false impression.  She points specifically to his failure to disclose that at least one of the trucks was encumbered.  But a failure to speak becomes a misrepresentation by omission only if the context requires the debtor to speak (that is, to provide the missing information).  See id.  Here, however,

the complaint contains no facts indicating that the debtor was obliged to tell the plaintiff that the trucks were encumbered.

To begin, the plaintiff does not assert that the debtor agreed to identify only unencumbered property when compiling the List. As we already have explained, her complaint relates that she asked him to prepare a list of property that he either owned or possessed. Including encumbered property on the List was entirely consistent with her request.

Moreover, when the debtor signed the Agreement, he vouchsafed only that he would not <u>further</u> encumber the enumerated items. In this respect, the Agreement states that the debtor would not "create, incur, assume, or suffer to exist" any encumbrances "upon the use of [his] property or assets." Giving these terms their natural meaning, they refer only to future encumbrances, not to preexisting ones. See <u>LifeWise Master Funding</u> v. <u>Telebank</u>, 374 F.3d 917, 920 & n.4 (10th Cir. 2004) (interpreting promise that funding recipient would not "create, incur, assume or suffer to exist any Lien" on described property as prohibiting recipient from allowing any future liens).

By the same token, the plaintiff's complaint does not aver that the debtor promised to provide a list of items sufficient to secure the loan fully. Without such a promise, the debtor may reasonably have believed that the unencumbered property on the List (which cost around $22,000 when purchased), together with

- 12 -

whatever equity he had in any encumbered property,[2] was sufficient for the plaintiff's purposes, so no further information was required.

That the plaintiff's attorney subsequently titled the list "List of Collateral," annexed it to the Agreement, and had the debtor initial it did not — as the plaintiff suggests — transmogrify the debtor's representations into misrepresentations. Importantly, the plaintiff's complaint presents no facts indicating that the parties reached a meeting of the minds regarding either the purpose of the List or the implications of its recharacterization. Nor does the complaint supply facts suggesting that the plaintiff believed the listed items to be unencumbered. After all, encumbered property can serve as collateral up to the value of the debtor's retained equity. See, e.g., Prudential Ins. Co. v. SW Bos. Hotel Venture, LLC (In re SW Bos. Hotel Venture, LLC), 748 F.3d 393, 398 (1st Cir. 2014); Harley-Davidson Motor Co. v. Bank of New Eng.-Old Colony, N.A., 897 F.2d 611, 613 (1st Cir. 1990). In the absence of facts indicating that the parties had reached a different understanding, the plaintiff's assertion that the debtor misled her gains no traction.

---

[2] The complaint is silent as to what equity, if any, the debtor had in one of the trucks. As to the other, it alleges that his equity was only $100.

- 13 -

Striving to blunt the force of this reasoning, the plaintiff insists that it should have been clear to the debtor that he was expected to disclose any preexisting encumbrances. In support, she cites a compendium of cases acknowledging that the existence of encumbrances is often salient information. See, e.g., In re Van Steinburg, 744 F.2d at 1061. But she cites no case holding that a debtor is required to disclose prior encumbrances simply because he has been asked to provide a list of property that he owns and/or possesses,[3] and we are aware of none.

The short of it is that, without pleaded facts adequate to support a reasonable inference of material falsity, the plaintiff's section 523(a)(2)(B) claim does not cross the line from possible to plausible. The plausibility requirement demands something more than facts showing that a claim is conceivable. See Iqbal, 556 U.S. at 678; Schatz v. Repub. State Leadership

_____

[3] Many of the cases cited by the plaintiff consider the discharge of debts incurred through affirmatively false representations regarding a particular item's true ownership status. See, e.g., Voyatzoglou v. Hambley (In re Hambley), 329 B.R. 382, 390-91, 399 (Bankr. E.D.N.Y. 2005); Hudson Valley Water Res., Inc. v. Boice (In re Boice), 149 B.R. 40, 43, 45 (Bankr. S.D.N.Y. 1992). As we already have explained, the plaintiff alleges no facts indicating that the debtor made affirmatively false statements about his ownership interest in the listed property.

- 14 -

Comm., 669 F.3d 50, 55 (1st Cir. 2012). The section 523(a)(2)(B) claim was, therefore, properly dismissed.[4]

This leaves only the plaintiff's claim that the bankruptcy court abused its discretion when it denied her motion to amend her complaint to add a section 523(a)(2)(A) claim. Federal Rule of Bankruptcy Procedure 7015 incorporates Federal Rule of Civil Procedure 15 as the mechanism for adjudicating motions to amend a pleading in the bankruptcy context. Rule 15 specifies that, with exceptions not relevant here, a party may amend her complaint only by leave of court. See Fed. R. Civ. P. 15(a)(2).

Courts are instructed to "freely give leave when justice so requires." Id. This permissiveness, though, extends only so far. See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006) (observing that courts need not "mindlessly grant every request for leave to amend"). A court may deny leave to amend for

---

[4] In a last-ditch attempt to snatch victory from the jaws of defeat, the plaintiff invokes the tenet that a party to a transaction must disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading." Restatement (Second) of Torts § 551(2)(b). No argument premised on section 551(2)(b) was raised below — and arguments advanced for the first time on appeal are deemed waived. See B&T Masonry Constr. Co. v. Pub. Serv. Mutual Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004); see also Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

- 15 -

a variety of reasons, including "futility, bad faith, undue delay, or a dilatory motive on the movant's part." Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).

We review a bankruptcy court's denial of leave to amend for abuse of discretion. See Zullo v. Lombardo (In re Lombardo), 755 F.3d 1, 3 (1st Cir. 2014). That review is satisfied if we discern some "arguably adequate basis" for the district court's decision. Hatch, 274 F.3d at 19.

In the case at hand, the bankruptcy court denied the plaintiff's motion for leave to amend on futility grounds. Where, as here, a party seeks leave to amend before any discovery has occurred, a reviewing court assays futility with reference to the Rule 12(b)(6) pleading criteria. See id. An attempt to amend is regarded as futile if the proposed amended complaint fails to state a plausible claim for relief. See id.; see also Tambone, 597 F.3d at 442.

In her proposed amended complaint, the plaintiff claims that the debt is exempt from discharge under section 523(a)(2)(A), as well as section 523(a)(2)(B). The former section exempts from discharge debts obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The plaintiff appears to contend that because the debtor did not disclose that at least one of the trucks was encumbered, he

- 16 -

obtained the loan through either false pretenses or a false representation. This contention lacks force.

Unlike section 523(a)(2)(B) — which delineates every element of a claim under it — section 523(a)(2)(A) incorporates common law principles. See Field, 516 U.S. at 69. To state a plausible section 523(a)(2)(A) claim, a complaint must include facts reasonably indicating that:

> 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the false statement, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 66 (1st Cir. 2012) (quoting In re Spigel, 260 F.3d at 32). The first element includes false pretenses, which arise when the circumstances "imply a particular set of facts, and one party knows the facts to be otherwise" but does not correct the counter-party's false impression. Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013) (citation omitted).

The circumstances here do not imply a particular set of facts that the debtor knew to be untrue. The debtor was never asked about whether or to what extent the listed items were encumbered, and the mere fact of an encumbrance was not inconsistent with their use as collateral. See, e.g., In re SW

- 17 -

Bos. Hotel Venture, 748 F.3d at 398; Harley-Davidson, 897 F.2d at 613. Seen in this light, the plaintiff's section 523(a)(2)(A) claim fails for much the same reason that her section 523(a)(2)(B) claim fails: she has not pleaded facts sufficient to make out a plausible claim that the debtor either operated under false pretenses or made a false representation. Indeed, she relies on the same facts she provided to support her section 523(a)(2)(B) claim, insisting that because the debtor did not tell her about the encumbrances, the List was false or, at least, actionably misleading. These facts did not bear the weight of her section 523(a)(2)(B) claim, and they are likewise too flimsy to bear the weight of her section 523(a)(2)(A) claim. The List was exactly what it purported to be: a description of items that the debtor used in the course of his business and their cost when he purchased them.

To say more would be to paint the lily. We conclude, as did the BAP, that an adequate basis existed for the bankruptcy court's denial of the plaintiff's motion to amend: the new claim, like the old claim, would have been futile. It follows that the bankruptcy court did not abuse its discretion in denying the motion for leave to amend.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment is

**Affirmed.**

- 18 -